IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| AMY MOTT and AGINA BRACKETT, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 07-6370-HO |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OFFICE DEPOT, INC., a Delaware | ) | |
| Corporation licensed in Oregon, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs Amy Mott and Agina Brackett allege several claims against defendant Office Depot, Inc.: (1) sex discrimination under Title VII (42 U.S.C. § 2000e et seq.) and O.R.S. 659A.030; (2) quid pro quo sexual harassment under Title VII and ORS 659A.030; (3) retaliation under Title VII and O.R.S. 659A.030; (4) intentional infliction of emotional distress; and (5) reckless infliction of emotional distress.  Amy Mott also alleges claims for wrongful discharge, interference with rights under the Family Medical Leave

Act (FMLA) and Oregon Family Leave Act (OFLA), and retaliation under FMLA and OFLA.

Amy Mott began working for Office Depot as a part-time cashier at one of its Salem, Oregon stores (store 855) in December of 2005. Agina Brackett began her employment with Office Depot at the same Salem store in April of 2005. Christopher Klesh transferred to store 855 in December of 2005 shortly after Mott started working there. Klesh directly supervised Mott and Brackett. Klesh verbally harassed Mott with many comments of a sexual nature, most of which occurred over a weekend sometime in March or April of 2006. Klesh also made several comments of a sexually suggestive nature to Brackett over a three and a half month period.

Mott discussed the comments with co-worker Jonathan Ayers.[1] Mott did not report the comments to management. However, on April 14, 2006, Graham Greene, an assistant store manager at another Office Depot location, received a call from an associate at store 855 stating that Klesh had made inappropriate comments to Mott. Green informed Tania Geradts, regional human resources manager for office depot, who also received an anonymous call on the Office Depot Alertline regarding the sexual and verbal harassment in which Klesh engaged. Geradts notified district manager Mike Hardesty who contacted store 855 manager, Steve Noyd. On April 15, 2006, Noyd

---

[1]Mott and Ayers were dating at the time.

2 - ORDER

began an investigation which included interviewing Mott, Ayers and Klesh.

Hardesty placed Klesh, who transferred to another Office Depot store in Salem on April 2, 2006, on administrative leave pending the outcome of the investigation. Hardesty concluded, based on the investigation, that Klesh should be terminated and at the end of April, 2006, Hardesty terminated Klesh.

Brackett did not complain to management about Klesh and did not participate in the investigation concerning Klesh's harassment of Mott.

On April 17, 2006, Office Depot implemented a nationwide "payroll refresh" initiative. The company reduced labor in all locations as a result of reduced sales. Both Mott and Brackett incurred a reduction in hours at this time.

In June of 2006, Mott took time off for health reasons. There was an issue with the necessary paperwork regarding the leave and Office Depot raised issues regarding Mott's attendance in July of 2006. Mott last worked on August 8, 2006, and failed to show up for work after that date. Office Depot made attempts to contact Mott regarding whether she intended to return to work, but Mott did not answer any calls from Office Depot. Mott had already submitted an application to work elsewhere by this time and Office Depot terminated Mott for job abandonment.

In June of 2006, Brackett resigned because she felt generally uncomfortable at Office Depot and because she and her husband were moving out of town.

### A.    Hostile Work Environment under State and Federal Law

A hostile environment exists when an employee can show

(1) that he or she  was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.

Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991).  The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463, n.4 (9th Cir. 1994).

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment is beyond the reach of Title VII, but "Title VII comes into play before the harassing conduct leads to a nervous breakdown.  An abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers."  Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).  Whether an environment is hostile or abusive is determined by looking at all the circumstances, including

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  No single factor is required. <u>Id.</u>[2]

Klesh made numerous suggestive comments to Mott regarding her appearance and also made comments to her regarding how well endowed he was.  Klesh also inquired of Mott regarding details of her sex life and her relationship with a co-employee.  Klesh also asked Mott to have sex with him.  Mott considered Klesh's comments innocent at first.  Mott Deposition at p. 12 (attached to Declaration of Counsel in Support Of Plaintiff's Response (#41) as Ex. 1).  Mott states that with respect to the comments that crossed the Line, it "actually just all happened in one weekend." <u>Id</u>. at p. 14.[3]  Mott also contends that after Klesh transferred to another store he called her and asked her to come work for him, asked to talk to her after work,  and requested

---

[2]With respect to state law claims under ORS § 659A.030, federal decisions under Title VII generally are instructive.  <u>Fred Meyer, Inc. v. Bureau of Labor and Indus.</u>, 152 Or. App. 302, 310 (1998):

> For sexual harassment [to be actionable] it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.  Whether sexual harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances.

<u>Holien v. Sears, Roebuck and Co.</u>, 298 Or. 76 (1984) (quoting <u>Henson v. City of Dundee</u>, 682 F.2d 897, 904 (11th Cir. 1982).

[3]Mott also heard Klesh, when asked for one dollar bills, tell a co-worker to get up on a table and strip for them.  It is unclear when this incident happened.

that she become a friend on MySpace.com.  In addition, Mott states that Klesh told her that no one would believe her if she complained.

The comments by Klesh were offensive and might cause interference with work performance if they occur frequently enough. But the comments were not pervasive as they essentially occurred over a three day period.  The conduct to which Mott was subjected likely does not rise to the level sufficient to demonstrate a triable issue of fact.  See Kortan v. California Youth Authority, 217 F.3d 1104, 1110-11 (9th Cir. 2000) (offensive conduct primarily concentrated to one occasion provides no triable issue whether the conduct was frequent, severe or abusive enough to interfere unreasonably with employment).  However, the conduct in this case does go a little beyond that of Kortan in that the Kortan supervisor's comments were about others and generally not directed at the plaintiff, and was a little bit less frequent.

Brackett alleges that she endured similar comments over a three and a half month period.  Office Depot maintains that the comments were not offensive enough.  However, comments such as "get naked and get into my office," inquiries as to sexual positions, number of people slept with and threesomes, comments about personal sexual experiences, and relating that he wanted Mott to come under the desk and suck him off are sufficiently severe to withstand summary judgment.

Office Depot contends that even if Klesh, as a supervisor, created a hostile environment, it is entitled to summary judgement as to liability because it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and the plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided.

Under Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998), an employer may raise an affirmative defense to damages or liability when subject to vicarious liability for the actions of a supervisor with immediate authority over an employee.  Office Depot must show by a preponderance of the evidence: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior;" and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765.  However, the defense is not available if the "supervisor's harassment culminates in a tangible employment action such as, discharge, demotion or undesirable reassignment." Id.

Mott asserts that she suffered tangible employment actions of having her work hours reduced and being terminated.  Brackett asserts that she had her hours reduced and that she was constructively discharged.  Accordingly, the plaintiffs assert that Office Depot is not entitled to the Ellerth/Faragher defense.  Office Depot responds

that Brackett voluntarily terminated her employment and that Mott's termination for job abandonment was unrelated to the harassment or complaint of harassment.  Additionally, Office Depot contends that any reduction in hours was due to the payroll refresh and unrelated to the harassment or complaint of harassment.  When a tangible employment action is "unrelated to any harassment or complaint thereof," the Ellerth/Faragher defense is available.  See Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 877 (termination unrelated to harassment or complaint did not prevent assertion of the defense).

While Bracket now claims that she was constructively discharged, it could not be because of any complaint of harassment as she did not complain to management of any harassment.  Bracket states that she felt

> uncomfortable in general.  And I - personal things had
> happened in my life and we had - my husband and I had been
> planning on moving to Eugene just to, you know we had been
> wanting to move back, but I resigned literally because I
> had to - I was moving to Eugene.

Brackett Deposition at p. 54 (attached to Declaration of Counsel in Support of Plaintiffs' Response (#41) as Ex. 2).  When Asked if Office Depot forced her away, Brackett stated, "I wouldn't say directly, I would say it was an uncomfortable situation." Id.  The harassing conduct by Klesh stopped because not only was he terminated, he transferred away from store 855 on April 2, 2006.  Brackett quit in June of 2006.  It is not reasonable to conclude that

she was constructively discharged because of any harassing behavior or complaint thereof.

Both plaintiffs had their work hours reduced at about the time of the investigation. Brackett also claims her work hours were reduced at about the time she contends that she resisted Klesh's behavior. However, Brackett stated that when Klesh started, her hours went above average, then for a while they went below average, and then went back to average and that the below average hours resulted from accruing too many hours to be included on an overtime report. Brackett Deposition at p. 48-50. Moreover, Brackett stated that Klesh's motivation in reducing hours was because of indifference. Brackett Deposition at p. 52. No reasonable fact finder could conclude that the temporary slight reduction in hours was related to harassment. Moreover, the reduction in hours that both plaintiffs encountered in April of 2006 was unrelated to harassment or complaints of harassment because it resulted from a company wide payroll refresh program. See Ex. B attached Declaration of Tania Geradts in Support of Defendant's Reply (#49). Mott speculates that her hours were reduced more than others. See Mott Deposition at p. 64 (attached to #41 as Ex. A) (out of eight to ten part-time cashiers Mott recalls two whose hours were cut less). No reasonable fact-finder could conclude that the payroll refresh

program,[4] and consequently plaintiff's reduction in hours, was related
to harassment or complaints thereof.

Mott also contends that she was disciplined for taking time off
related to psychological injury allegedly caused by Klesh.  Two
months after the investigation and termination of Klesh, Mott's
grandmother called Office Depot to inform it that plaintiff needed
time off.  Because it did not hear directly from plaintiff, Office
Depot sent a letter on June 20, 2006, asking Mott to contact Office
Depot, by June 30, 2006, to request leave.  Mott claims that Store
Manager Steve Noyd told her that it was over with and she needed to
move on.[5]  As will be discussed below, Mott was not entitled to FMLA

---

[4]In the briefing, plaintiffs argue that they were not provided
with any discovery concerning work hours or the payroll refresh
program, but Office Depot provided the document describing the
payroll refresh and produced multiple work schedules for comparison
employees.  See Meneghello Declaration (#50) at Ex. A.  At oral
argument, plaintiff's counsel finally addressed the evidence
concerning work hours and contends that it was repetitive and
incomplete, but there is no showing in the record that plaintiffs
moved to compel further discovery regarding payroll records.
counsel also cited instances in the records provided in an attempt
to show that Mott and Brackett received a greater reduction in
hours than similarly situated employees.  See Meneghello
Declaration, Ex. A at pp. 16, 20, 23 ("Dustin" has 30 hours, Mott
has 31 hours, Brackett has 31 hours for week of 1/22/06; "Dustin"
has 15 hours, Mott has 9.5 hours and Brackett has 18 hours for week
of 4/23/06; "Dustin" has 30 hours, Mott has 26.5 hours and Brackett
has 29 hours for week of 5/28/06.  This is insufficient to
demonstrate an issue of fact and the court notes that for the week
of 6/4/06 "Dustin" had 26.5 hours, Mott had 34.5 hours and Brackett
had 32.5 hours).  See Meneghello Declaration, Ex. A at p. 24.
Plaintiffs fail to show that over the period of time that the
payroll refresh program was implemented that they suffered a
significant tangible employment action via a reduction in hours
greater than other similarly situated employees who did not suffer
harassment or were not involved in the investigation or complaint
of harassment.

[5]It is not clear when Mott believes this statement was made,
but it appears to have been just after the investigation in April
of 2006.  See Mott Deposition at p. 45-46 (attached to #41 as Ex.
                                                        (continued...)

or OFLA leave.  With respect to the two weeks Mott was allowed to take without any notation of unapproved time off, Mott stated that Office Depot appropriately handled her time off from work and was good about letting her take time off.  Mott Deposition at p. 55, 56 (attached to #41 as Ex. A).  Beyond those two weeks, Mott did not provide paperwork documenting the need for leave.  Additionally, Mott stated that the person who gave her the performance improvement plan based on the absences, didn't know about the situation with Klesh. Moreover, several of the occurrences for non-attendance were not related to the situation with Klesh.  Mott Deposition at p. 79, 81-82.  Accordingly, Office Depot may raise a defense to liability for Klesh's actions.

As noted above, Office Depot must show by a preponderance of the evidence: (1)that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Office Depot's written policy defined prohibited behavior, established procedures for investigating and resolving complaints including complaints about immediate supervisors, and assured

---

[5](...continued)
1).    However, Mott does state that when she was having problems dealing with what had happened to her and needed time off, that Noyd again told her to get over it.  Mott Deposition at p. 83. Brackett stated that Mott was told she did not have to worry about it and its not going to be an issue any longer.  Brackett Deposition at p. 31-32 (attached to #41 as Ex. 2).

employees there would be no retaliation.  In addition, Office Depot had a complaint hotline as an alternative reporting mechanism. Paragraph 7 of the Declaration of Tania Geradts in Support Of Motion and Ex. B to Geradts declaration (#26);.  Both Mott and Brackett were aware of the policy and hotline.  As soon as Office Depot received notice of Klesh's harassing conduct, it immediately conducted an investigation, suspended Klesh pending a determination, and after conducting several interviews and obtaining written statements, terminated Klesh.

Plaintiffs contend that because of Klesh's prior disciplinary history, however, Office Depot did not exercise reasonable care to prevent the harassment.  Plaintiffs note that Klesh was terminated by a previous employer after being accused of stealing a customer's credit card number, was disciplined by a previous employer for making threats to kill someone in an e-mail, engaged in conversations of a sexual nature with other management level employees, was disciplined by Office Depot in 2001 for viewing pornographic material on an Office Depot computer, and was disciplined in connection with a complaint by him and by employee Cynthia Tardiff in 2001.[6]

Office Depot cannot investigate and discipline Klesh for activities with a previous employer. Office Depot investigated the the incidents regarding the computer and Tardiff.   Klesh was

---

[6]Klesh's conversations of a sexual nature with other management level employees occurred with friends and were of a personal and non-work related nature.

disciplined and warned that any further inappropriate use of the internet would result in termination. As to the Tardiff issue, both Klesh and Tardiff accused each other of inappropriate conduct, but Klesh did not take his complaint to management until an investigation into Tardiff's complaint began. There was insufficient evidence to do anything with Tardiff's complaint. Klesh was disciplined for using poor judgment in dealing with the hiring of a new associate and for not dealing correctly with inappropriate statements made during the hiring process. Klesh was warned to adhere to all Office Depot policies including harassment issues and warned not to make inappropriate comments. Moreover, Office Depot warned that upon recurrence, further corrective action would be taken up to and including termination.

While plaintiffs contend that the previous disciplinary action taken against Klesh demonstrates issues of fact as to the reasonable care exercised by Office Depot to prevent sexually harassing behavior, a reasonable trier of fact could not conclude such. Office Depot disciplined Klesh, warned him not to engage in such conduct, noted that he could be terminated if he continued to engage in such conduct and when he in fact did again engage in such conduct in 2006, he was terminated. Office Depot acted promptly in all instances and took progressive action to prevent harassment up to termination when it became necessary.

Office Depot also acted promptly and reasonably with respect to the 2006 complaints.  Office Depot exercised reasonable care to prevent and correct promptly any sexually harassing behavior. See Holly D. V. California Inst. of Technology, 339 F.3d 1158, 1177-78 (9th Cir. 2003) (issue is whether employer's actions as a whole established a reasonable mechanism for prevention and correction of harassment and failure to pursue all possible leads does not undermine the substantial showing that an investigation was both prompt and reasonable).  Plaintiffs' argument amounts to a requirement that upon the first instance of a sexual harassment complaint, an employee must be fired.  There is no support for such a position.  Office Depot's written policy combined with progressive discipline establishes that no genuine issues of fact exist regarding whether it exercised reasonable care to prevent and correct promptly any sexually harassing behavior.  Cf. Intlekofer v. Turnage, 973 F.2d 773, 780 (9th Cir. 1992) (if corrective discipline meted out by an employer does not cause behavior to subside, more severe disciplinary action is necessary).

Thus, the issue becomes whether plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  Proof that Mott and Brackett failed to use the complaint procedure provided by office depot is normally sufficient to establish this element.  Holly D., 339 F.3d at 1178.  Both Mott and Brackett were aware of the complaint

procedures and the hotline and both failed to take advantage without reasonable justification. Accordingly, Office Depot's motion for summary judgment as to the hostile work environment claims is granted.

B.   Disparate Treatment under State and Federal Law

The federal and state claims for disparate treatment are analyzed together. See Henderson v. Jantzen, Inc., 79 Or.App. 654, 657 (1986) (adopting Supreme Court's formulation of prima facie case). Such claims are analyzed under the burden shifting standard of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, Plaintiffs must establish that (1) they are members of a protected class; (2) they were qualified for their positions; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). If plaintiffs establish these elements, then the burden shifts to Office Depot to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employment actions it took. McDonnell Douglas, 411 U.S. at 802. If Office Depot meets this burden, any presumption that Office Depot discriminated drops from the case, and the plaintiffs must then show that Office Depot's alleged reasons for the actions

were merely a pretext for discrimination.  St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 507-08 (1993).  The burden of persuasion, as
opposed to production, however, remains with the plaintiff at all
times. Id. at 511.  Plaintiffs may prove pretext either directly by
persuading the court that a discriminatory reason more likely
motivated the employer or indirectly by showing that the employer's
proffered explanation is unworthy of credence.  Raad v. Fairbanks
North Star Borough School Dist., 323 F.3d 1185, 1196 (9th Cir. 2003).
Office Depot contends that plaintiffs fail to show that similarly
situated employees were treated differently and that it had a
legitimate reason for reducing the plaintiffs' hours.

Mott asserts that she was fired for missing work while Klesh was
allowed to view pornography and Ayers was allowed to have sexual
conversations without being fired.  However, Mott fails to compare to
similarly situated employees in this instance because the conduct for
which she was disciplined was not similar.  See Hardy v. Reddaway,
Inc., 2004 WL 793203 at *5 (D.Or. 2004) (Individuals are similarly
situated when they have similar jobs and display similar conduct).
Mott and Brackett, in their briefing, offer the mere conclusion that
they were treated differently than male employees with respect to
reduction in hours.  Plaintiffs fail to present sufficient evidence
of disproportionate reduction in work hours due to the payroll
refresh program.  Accordingly, the motion for summary judgment as to
the disparate treatment claims is granted.

C.    Quid Pro Quo under State and Federal Law

Quid pro quo claims are analyzed together under state and federal law. See, e.g., Fred Meyer, Inc., 152 Or.App. at 310 (Title VII cases are instructive as to ORS § 659A.030). To prove actionable harassment under a quid pro quo theory, plaintiffs must show that Klesh conditioned a job, a job benefit, or the absence of a job detriment, upon plaintiffs' acceptance of sexual conduct. Craig v. M&O Agencies, Inc., 496 F.3d 1047, 1054 (9th Cir. 2007). Both Mott and Brackett assert that Klesh reduced their hours when they resisted Klesh's sexual overtures. However, Mott stated that her hours were not reduced until after her meeting with Noyd, which occurred after Klesh had already transferred. Mott Deposition at p. 57-58 (attached to #41 as Ex. A). Mott also contends that Klesh tried to get her to work at another store, but he had no authority over her at this point and thus this cannot constitute quid pro quo harassment. Porter v. California Dept. of Corrections, 419 F.3d 885, 892 (9th Cir. 2005)

Brackett also testified, as noted above, that her hours went above average, then below average, and then back to average under Klesh and that Klesh's motivation in reducing hours was because of indifference. Brackett offers nothing more than speculation that the brief de minimus reduction in her hours by Klesh was related to acceptance of sexual conduct. Such speculation is insufficient to support a claim for quid pro quo harassment. See Craig, 496 F.3d at

1054. Accordingly, summary judgment is granted as to the quid pro quo claims.

D.   Retaliation under State and Federal Law

State and federal retaliation claims are analyzed together. See, e.g., Harris v. Pameco Corp., 170 Or. App. 164, 179 (2000). To prevail on a retaliation claim, plaintiffs must show: (1) that they engaged in a protected activity; (2) that they suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).

Mott asserts that she resisted Klesh and participated in the investigation process and as a result she suffered reduced hours and constructive discharge. However, other than timing, there is no connection between the reduction in hours and the participation in the investigation or alleged opposition to harassment. Timing alone in this case is insufficient. Cf. Rajah v. County of Clark, 2008 WL 2476704 (9th Cir. June 18, 2008) (the essential causal link is lacking because plaintiff was not singled out for an adverse employment action). The same is true with respect to the link to the alleged constructive discharge. Although there are cases in which the Ninth Circuit has found a causal connection based on timing alone,[7] the

_____

[7]See Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the
(continued...)

Ninth Circuit has also explained that, although the timing is useful in determining whether there is circumstantial evidence that would permit a reasonable fact finder to conclude that an employer retaliated against an employee for protected activity, the timing alone cannot support an inference of retaliation without additional evidence of the surrounding circumstances that supports such an inference. Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003).

Mott was given a performance improvement plan because of her absences which occurred both before she claims she couldn't work because of Klesh's conduct and after. She was given notice that further absences could result in termination and she claims she had to quit as a result. However, as noted above, Mott was given excused absences when she provided the appropriate medical documentation and she did not provide documentation for any further absences. Office Depot's imposition of a performance improvement plan based on absences were justified and, thus, the action cannot constitute an adverse employment decision.

---

7(...continued)
protected activity); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731-32 (9th Cir. 1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity). In this case the harassing conduct and investigation ended about four months before plaintiff claims she was constructively discharged. Plaintiff's claim is perhaps better based on asserting a right to medical leave rather than related to sexual harassment.

Office Depot also had a legitimate non-discriminatory reason for its actions and Mott fails to bring forth sufficient evidence of pretext.

Mott also claims she suffered retaliation because co-workers shunned her. Ostracism by co-workers is not a ground for a retaliation claim. <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 893 (9th Cir. 2003). Mott further claims she was given less desirable shifts, but the record does not support this allegation.

Brackett similarly fails to show a connection between her reduction in hours and any protected activity. Brackett never complained of harassment and did not participate in the investigation. Also, as noted above, any de minimus reduction of hours by Klesh was not related to resisting sexual harassment.

E.   <u>Wrongful Discharge</u>

Mott asserts that she was constructively discharged for taking medical leave and for resisting Klesh's harassment. To allege a claim of wrongful discharge there must be a discharge, and that discharge must be wrongful. <u>Moustachetti v. State of Oregon</u>, 319 Or. 319, 325 (1994). The discharge can be constructive. To establish a constructive discharge stemming from unacceptable working conditions, a plaintiff must prove (1) that the employer deliberately created or deliberately maintained the working conditions (2) with the intention of forcing the employee to leave the employment, and (3) that the

employee left employment because of the working conditions <u>McGanty v. Staudenraus</u>, 321 Or. 532, 553 (1995).

Klesh was fired some four months prior to Mott's alleged constructive discharge. <u>See Montero v. AGCO Corp</u>., 192 F.3d 856, 861 (9th Cir. 1999) (no constructive discharge where harassing conduct ceased three to four months before leaving). Moreover, plaintiff was not entitled to medical leave, as will be discussed below. Thus, denying such leave, even if Office Depot can be presumed to have denied such leave by requiring adequate paperwork, cannot form the basis of a constructive discharge. In short, defendant did not create unacceptable working conditions such that a reasonable person would have felt forced to quit. And to the extent Office Depot terminated Mott for failure to show up for work, such action was justified and not wrongful because Mott was not entitled to assert federal or state medical leave. There is insufficient evidence linking the discharge to an improper motive and summary judgment is granted as to the wrongful discharge claim.


F.   FMLA Interference

It is unlawful to interfere with rights provided by the FMLA. 29 U.S.C. § 2615(a)(1). However, Mott was not eligible for FMLA leave because she had not worked at least 12 months for Office Depot. 29 C.F.R. § 825.110(a)(1). Mott claims Office Depot should be estopped from asserting that she was not entitled to leave because it

did grant her leave for a two week period and the form she used did

state it was to be used for FMLA leave.   The Second Circuit has

stated that:

> the doctrine of equitable estoppel itself may apply where
> an employer who has initially provided notice of
> eligibility for leave later seeks to challenge that
> eligibility. Thus, future employees who rely to their
> detriment upon the assurance of their employer that they
> qualify for leave under the FMLA may have recourse to the
> doctrine of equitable estoppel even without an enforceable
> regulation protecting their right to rely upon an
> employer's notice of eligibility.

Woodford v. Community Action of Greene County, Inc., 268 F.3d 51, 57

(2d Cir. 2001).  In this case, Office Depot gave Mott a form called

"Certification of Health Care Provider" that stated it was to be used

for FMLA leave, but did not expressly inform her that she was

eligible for FMLA leave.  Moreover, Mott states that she could not

work when she had panic attacks and thus even if she knew she was not

entitled to medical leave she would have taken time off.  Mott

Deposition at p. 73.  Moreover, when Mott first took leave due to

panic attacks, she had not been given the form indicating it was to

be used for FMLA leave.  Thus, she could not have detrimentally

relied on the notation on the form even assuming the Ninth Circuit

would allow an equitable estoppel theory.  The motion for summary

judgment is granted as to this claim.

G.   FMLA Retaliation

Mott presents insufficient evidence that she opposed a practice made unlawful by the FMLA, but rather only shows that she requested leave and it was denied, i.e., a claim for interference. By its plain meaning, the anti-retaliation provision of the FMLA does not cover visiting negative consequences on an employee simply because she has used FMLA leave. Such action is, instead, covered under section 2615(a)(1), the provision governing Interference with the exercise of rights. Bachelder, 259 F.3d at 1124. The only instance in which an inference might be drawn regarding opposition to unlawful practices is when Mott complained to Dean Woods regarding use of medical leave against her for discipline. However, Woods issued the improvement plan to plaintiff before she complained, and no additional action was taken against plaintiff for taking medical leave. Plaintiff left her employment and was terminated because she would not respond to Office Depot's inquiries as to whether she intended to quit. Accordingly, summary judgment is granted as to this claim.


H.   OFLA Interference

Mott was not eligible for OFLA because she did not work an average of 25 hours for 180 days prior to requesting leave. O.R.S. § 659A.156(1). Accordingly, summary judgment is granted as to this claim.

I.    OFLA Retaliation

To establish her prima facie case of retaliatory discharge under OFLA, Mott must show: 1) she availed herself of a protected right; 2) she was adversely affected by an employment decision; and 3) a causal connection between the two actions. <u>Price v. Multnomah Co.</u>, 132 F.Supp.2d 1290, 1296 (D.Or.2001).  Mott did not complain about medical leave until after her performance issues were noted and she did not suffer any further discipline after making such complaint as noted above.  Her termination was based on her failure to respond to Office Depot's inquiries of whether she quit.  Summary judgment is granted as to this claim as well.  The termination for job abandonment can not reasonably be attributed to the complaint or invoking OFLA leave.


J.    Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim, plaintiffs must demonstrate that (1) Office Depot intended to inflict severe emotional distress, (2) Office Depot's acts were the cause of plaintiffs' severe emotional distress, and (3) Office Depot's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. <u>McGanty v. Staudenraus</u>, 321 Or. 532, 543 (1995).

The intent element of IIED is satisfied not only where the actor desires to inflict severe emotional distress, but also where he knows

that such distress is certain, or substantially certain to result from his conduct.  <u>McGanty</u>, 321 Or. at 550.

The Oregon Supreme Court has noted that the duty to refrain from abusive behavior in the employment relationship comes close to that of the physician toward a patient.  <u>Hall v. The May Department Stores Co.</u>, 292 Or. 131, 138 (1981).  Thus, the employment relationship may impose a more demanding obligation to refrain from inflicting mental and emotional distress.  <u>See</u> <u>id.</u>  The consideration of the relationship between the alleged tortfeasor and the alleged victim is relevant to the inquiry regarding the conduct element.  <u>See</u> <u>Rockhill v. Pollard</u>, 259 Or. 54, 63 (1971).

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.  If the minds of reasonable men would not differ on the subject, the court is obliged to grant summary judgment.  <u>Pakos v. Clark</u>, 253 Or. 113, 132 (1969).

Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. <u>Williams v. Tri-County Metropolitan Transportation District of Oregon</u>, 153 Or.App. 686, 689-90 (1998); <u>Erickson v. Christenson</u>, 99 Or.App. 104, 107, rev dismissed 311 Or. 266 (1991).  Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage

of an unusually vulnerable individual.  See Checkley v. Boyd, 170 Or.App. 721 (2000).  The setting in which the allegedly outrageous conduct occurs--for example, in a public venue or within the employment context--also can bear on the degree of offensiveness of the conduct.  See, e.g., Hall, 292 Or. at 137; Trout v. Umatilla Co. School Dist., 77 Or.App. 95, 102 (1985).

The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law. Cf Madani v. Kendall Ford Co., 312 Or 198, 203-06 (1991) (terminating employee for refusing to pull down his pants); Patton v. J.C. Penney Co., 301 Or 117, 124 (1986) (employee terminated because he refused to stop dating co-worker); Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 237 (1992) (employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); Snyder v. Sunshine Dairy, 87 Or.App. 215, 218 (1987) (inconsistent and excessive supervision, unjustified reprimands (emphasis added), threats of termination, requiring the employee to perform menial tasks). See also Wells v. Thomas, 569 F.Supp 426, 433 (EDPa 1983) (placing plaintiff in newly created position without responsibilities, taking away her private office, reassigning her secretary, allowing her phone calls to go unanswered, giving her poor performance evaluations for the first time in 25

years, and terminating her); <u>Beidler v. W.R. Grace, Inc.</u>, 461 F.SUPP
1013 (EDPa 1978), aff'd 609 F.2d 500 (3rd Cir. 1979) (plaintiff
excluded from meetings necessary to perform his job, found papers
constantly rearranged on his desk to annoy him, informed he would be
given a new assistant without consultation, learned from rumors that
his job was in jeopardy, and evaded by his superior who intimated
that the new assistant would be replacing him).

The conduct that plaintiffs' suffered, even if attributable to
Office Depot, is not sufficiently egregious given its relatively
limited duration.  However, "Oregon cases which have allowed claims
for intentional infliction of emotional distress to proceed typically
involve acts of psychological and physical intimidation, racism, or
<u>sexual harassment</u>." <u>Garrison v. Alaska Airlines, Inc.</u>, Civil No.
98-433-KI, Opinion by Judge King dated June 17, 1999, p. 8 (emphasis
added).  However, Office Depot is not responsible for Klesh's actions
in this case.

Under the doctrine of respondeat superior, an employer is liable
for an employee's torts when the employee acts within the scope of
employment.  Negligence or other tortious conduct by the employer is
not required. <u>Chesterman v. Barmon</u>, 305 Or. 439, 442 (1988).  An
employee's act is within the scope of his employment if (1) it occurs
substantially within the time and space limits authorized by the
employment; (2) the employee is motivated at least in part by a
purpose to serve the employer; and (3) the act is of a kind that the

employee was hired to perform. Id. Although plaintiffs attempt to paint Klesh's harassing conduct as a style of management, there is a lack of support in the record to find that the harassing acts of Klesh were the kind he was hired to perform. The fact that employment provides the opportunity to engage in the conduct is not enough. See Vinsonhaler v. Quantum Residential Corp., 189 Or.App. 1, 6-7 (2003) (The fact that employment provided an opportunity to engage in tortious conduct, however, is insufficient to establish the requisite nexus with employment as a matter of law).

Plaintiffs also imply that the past disciplinary history regarding Klesh is sufficient to make Office Depot liable for his harassment. However, Non-responsiveness to claims of workplace harassment is insufficient to support liability for IIED. Wheeler v. Marathon Printing, Inc., 157 Or.App. 290, 308 (1998). Furthermore, as noted above, Office Depot appropriately disciplined Klesh in a progressive manner regarding harassment complaints. There is insufficient conduct on the part of Office Depot to support any claims of infliction of emotional distress.

K.   Reckless Infliction of Emotional Distress

Even if such a cause of action exists, summary judgment is appropriate because the alleged conduct does not qualify as an extraordinary transgression of the bounds of socially tolerable conduct.

L.   Attorney Fees

Office Depot seeks attorney fees against Brackett contending that her claim of retaliation is frivolous because she never complained about harassment.  Brackett never complained, but argues that she resisted Klesh's harassment by walking away from him when he talked in a sexually derogatory manner, asked him what his boss would say if he heard Klesh talk like that, did not respond to his comments, and avoided him.  Brackett also relies on the increase followed by a decrease, followed by a return to average of her hours under Klesh and his "indifference."

Fee awards to prevailing defendants in Title VII cases should be permitted not routinely, not simply because a defendant succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.  Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421 (1978).

> the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

Id.

Brackett initially alleged that she "complained about conduct she reasonably believed to constitute sexual harassment in violation of Title VII," and she suffered retaliation "because of those

complaints." Brackett now admits this is not true and in response to the summary judgment motion, raises a new constructive discharge theory based on vague assertions of resisting Klesh's harassment and then leaving her employment some three months after Klesh had been terminated. Because Brackett raised false allegations of complaints to assert a claim for retaliation and continued to pursue the claim even after conceding she did not complain about harassing conduct, Brackett's retaliation claim is unreasonable and frivolous. This could support the defendant's motion for attorney fees. Considering all the allegations, however, the motion is denied.

<u>CONCLUSION</u>

For the reasons stated above, defendant's motion for summary judgement (#22) is granted and this action is dismissed. The clerk shall enter a judgment dismissing this action.

DATED this __12th__ day of June, 2009.

                    ___s/ Michael R. Hogan_____
                    United States District Judge